### KELLNER *v.* KELLNER et al.

No. 41806          April 24, 1961          129 So. 2d 391

*Abe Somerville,* Cleveland; *Lucy Somerville Howorth,* Washington, D. C., for appellant.

*Roy D. Campbell, Jr.,* Greenville, for appellees.

McElroy, J.

This is an appeal by Mrs. Anne D. Kellner, Administratrix of the Estate of Ernest Kellner, Sr., deceased, from the Chancery Court of Washington County. The appellees filed suit to set aside certain deeds or be subrogated to certain liens of deeds of trust made by the

deceased, and the appellant and deceased. The chancery court entered an order sustaining the rights of the appellees to be subrogated under said deeds of trust. Thus this appeal.

The late Ernest Kellner, Sr., a longtime resident and practicing attorney of Washington County, Mississippi, died intestate on September 1, 1959, leaving as his sole heirs-at-law his widow (appellant here) and his five adult children (appellees).

For many years and until March 10, 1955, Ernest Kellner, Sr. was the owner of certain property in Washington County, Mississippi, which we shall designate as the "little house" and the "big house." The deceased and the appellant were married, divorced and remarried.

In 1953, Mr. Kellner, Sr. borrowed $15,000 from the Standard Life Insurance Company of the South, for which he gave his installment promissory note, secured by a deed of trust covering the "big house", dated July 1, 1953, and a pledge of the rentals thereon. The proceeds of the loan were used to convert the "big house" into rental apartments. The appellant had knowledge of this transaction.

March 10, 1955, Mr. Kellner, Sr., conveyed the "little house" to the appellant, which stated that it was being deeded "by love and affection." In 1955, the "little house" was enlarged and improved so that Mr. Kellner, Sr. and appellant might reside in it instead of one of the apartments of the big house. The cost of improvements was $10,000, less certain adjustments. Mr. Kellner paid the contractor $5,164.19 on February 9, 1955, and after the work had been completed, Mr. Kellner and appellant borrowed from Edyth Y. Quinn, Trustee under the will of Q. N. Quinn, deceased, the principal sum of $7,500, evidenced by their four joint and several promissory notes and a deed of trust on the "little house" (then appellant's property), dated November 4, 1955. The deed

of trust was duly filed and recorded on November 17, 1955.

The loan check of Edyth Y. Quinn, Trustee, in the amount of $7,500, marked "for secured loan to Ernest Kellner and wife", was made payable to J. Robertshaw and was endorsed by Ernest Kellner, Sr. and Anne D. Kellner. This check was dated November 4, 1955. From this check the Washington County Building & Loan Association paid itself the sum of $1,642.49 in discharge of a balance of a prior indebtedness against the "little house", issued its check, dated November 12, 1955, to Mr. Kellner, Sr. for the balance, $5,857.51, which was deposited to his account in the First National Bank on the same date. On November 15, 1955, Mr. Kellner paid the contractor the balance of $4,581 for the improvement of the "little house", then the property of appellant.

On October 24, 1955, Mr. Kellner, Sr. wrote and subscribed a holographic will, reading: "I give all my property of every kind to my beloved wife." This instrument was signed by Mr. Kellner, Sr. On July 30, 1957, Mr. Kellner, Sr. wrote and subscribed the following holographic instrument "I hereby revoke any and all wills therefore written by me," which was signed. On May 30, 1958, a quitclaim deed signed by Mr. Kellner, Sr. reciting "in consideration of my love and affection for my devoted wife Anne D. Kellner, and for other good and valuable considerations" conveyed to appellant the "big house."

For more than a year before the death of Mr. Kellner, Sr., appellant was the record owner of both the "little house" and the "big house." They did not pass to her by reason of his death.

After the death of Mr. Kellner, appellant was appointed, qualified, and has ever since acted as Administratrix of his estate. The estate comprised $14,285.44. The secured claims of Standard Life Insurance Company were probated, allowed and paid from funds of the estate

by appellant as administratrix in the amount of $6,665.07, and of Mrs. Quinn's in the amount of $4,480.

A petition was filed in the chancery court by the appellees which sought to set aside the deeds of Mr. Kellner, Sr. to the appellant, or to be equitably subrogated to the liens of the said deeds of trust. The petition set forth in part, as follows: "* * * as to the big house, the defendant accepted the gift thereof burdened with the encumbrance of that certain deed of trust in favor of Standard Life Insurance Company of the South, dated the 1st day of July, 1953, as the same appears of record in Book 518, at page 439, of the land records of Washington County, Mississippi; in the office of the Chancery Clerk of said county; that after the death of Ernest Kellner, Sr. the defendant collected the rents and profits derived from said property and, despite the fact that said rents and profits were pledged to secure the payment of the indebtedness owing to Standard Life Insurance Company and secured by said encumbrance, failed to apply same to the payment of said indebtedness, thereby causing said indebtedness to become in arrears and subject to acceleration; that, thereafter the defendant, by her agents and attorneys, induced said mortgagee to probate in Cause No. 22,083 on the Probate Docket of this Court the note evidencing the unpaid balance of said indebtedness as a claim against the Estate of Ernest Kellner, Sr. and wrongfully caused same to be paid and discharged out of funds of said Estate belonging to these complainants, notwithstanding that the original proceeds of said indebtedness had been applied to the payment of the cost of improvements made in said big house; that as a result of the aforesaid actions of defendant, she has been unjustly enriched at the expense of said Estate and these complainants, and has been permitted to do by indirection what she could not lawfully do directly, to-wit: cause the said Estate to exonerate the big house from the indebtedness with which it was burdened when she

accepted it as a gift from Ernest Kellner, Sr.; so that these complainants are equitably entitled to be subrogated to the lien of said deed of trust * * * as to the little house, defendant was the owner thereof by inter vivos gift from the deceased, Ernest Kellner, Sr., when on or about the 4th day of November, 1955, she voluntarily joined with said decedent in executing promissory notes and a deed of trust, evidencing and securing a loan in the principal sum of $7,500.00, the proceeds of which loan were applied to the payment of the cost of improvements made on said little house * * * after the death of said Ernest Kellner, Sr., defendant, by her agents and attorneys, induced the owner and holder of the notes evidencing the unpaid balance of said indebtedness to probate same as a claim or claims against the Estate of Ernest Kellner, Sr. * * * and wrongfully caused same to be paid out of funds of said Estate belonging to the complainants, thereby causing said Estate to exonerate the separate property of defendant from the burden of an indebtedness and encumbrance which defendant voluntarily created and unjustly enriching defendant at the expense of said Estate and these complainants; so that these complainants are equitably entitled to be subrogated to the lien of the said deed of trust * * *''

To this petition, the appellant filed an answer setting forth in part, as follows: ''Defendant admits that there was a deed of trust lien held by the Standard Life Insurance Company of the South on the property styled by the Complaints 'the big house' as of the date said property was conveyed to her by her late husband * * * Said property, prior to its conveyance to her, was managed by the real estate firm of J. L. McClendon and that after its conveyance to her she continued to have said property managed by said firm; that shortly after the death of her husband Ernest Kellner, Sr. she was advised that payments on land for several months was past due, and there being no funds available in the rental account she

borrowed $650.00 from the First National Bank of Green-ville, and paid to the Standard Life Insurance Company, on September 10, 1959, the sum of $636.40, being the pay-ments due for June, July, August and September, 1959. Defendant further states that thereafter she paid taxes and insurance premiums, partially from her personal funds, since several of the apartments were vacant. * * * This defendant expressly admits that as to said property, styled by the complainants 'the big house' that she ac-cepted the gift thereof as a completed inter vivos gift from the deceased Ernest Kellner, Sr. to her. (b) This defendant admits that as to the property styled by the complainants 'the little house' she was and is the owner thereof by inter vivos gift from the deceased Ernest Kellner, Sr.'' The appellant's evidence is to this effect.

The case was tried before the chancellor on the peti-tion, answer, and the proof offered on behalf of appel-lant and appellees. The deed of trust to the Standard Life Insurance Company of the South made by Mr. Kell-ner under date of July 1, 1953, stated in part, as follows: ''GRANTOR HEREBY assigns to the Beneficiary any and all rents accruing from the premises covered by this deed of trust and covenants and agrees to execute and deliver, when so requested to do, and as often as request-ed, any further, other and specific assignments of rents from the properties covered hereby, and authorizes the Beneficiary, by its agent, to take possession of said premises at any time there is any default in the pay-ment of the debt hereby secured or in the performance of any obligation herein contained, and rent the same for the account of Grantor and to deduct from such rents all costs of collection and to apply the remainder of the same on the debt hereby secured.''

The chancellor held to this effect: ''The proof is in-sufficient to establish that the respective conveyances by the decedent to the defendant of the little house and of the big house are or were intended to be mortgages and

said conveyances are hereby declared to be deeds of gift. * * * The aforesaid probated claims of Standard Life Insurance Company of the South and of Edyth Y. Quinn, Trustee under the will of Q. N. Quinn, deceased, constituted valid claims against the Estate of Ernest Kellner, Sr., deceased, which said claimants had the right as mortgagees to probate for payment out of the personal estate of Ernest Kellner, Sr., deceased. * * * as between the complainants herein and the defendant, said defendant is not equitably entitled to have her separate properties exonerated from the burdens of the respective encumbrances which secured said claims. On the contrary, the complainants, being five of the six surviving heirs-at-law of Ernest Kellner, Sr., deceased, are equitably entitled to be subrogated to the lien of the aforesaid deed of trust in favor of Standard Life Insurance Company of the South to the extent of five-sixth (5/6ths) of $6,665.07, the amount of funds of the Estate of Ernest Kellner, Sr., deceased, under (sic) to pay the probated claim secured by said deed of trust; and said complainants are also equitably entitled to be subrogated to the lien of the aforesaid deed of trust in favor of Edyth Y. Quinn, Trustee under the will of Q. N. Quinn, deceased, to the extent of five-sixth (5/6ths) of $4,480.00, the amount of funds of said Estate used to pay the probated claim secured by said deed of trust.''

We believe that the chancellor was correct in his holding. Both deeds to the appellant were without warranty. ''A conveyance without any warranty shall operate to transfer the title and possession of the grantor as a quitclaim and release.'' Section 845, Code 1942, Recompiled. ''A conveyance of quitclaim and release shall be sufficient to pass all the estate or interest the grantor has in the land conveyed, and shall estop the grantor and his heirs from asserting a subsequently acquired adverse title to the lands conveyed.'' Section 846, Code 1942, Recompiled.

As to the deed of the "little house", the appellant was owner of the property at the time she gave a deed of trust to Mrs. Quinn, and was therefore obligated to pay the debt. As to the "big house", when the deed was made to her in 1958, there was already a deed of trust on the house which assigns to the beneficiary any and all rents acccruing from the premises covered by the deed of trust. In the appellant's answer, she admitted that there was a deed of trust on this house given by her late husband, and that the property prior to its conveyance to her was managed by the real estate firm of J. L. McClendon, and that after its conveyance to her, she continued to have said property managed by said firm; and that shortly after the death of her husband, she was advised that payments on the property were past due, and there being no funds available in the rental account, she borrowed $650 from the First National Bank and paid this indebtedness of $636.40, being payments due for June, July, August and September 1959. She also stated that she accepted the property styled "the big house" as a complete inter vivos gift from her deceased husband. She had knowledge of these obligations on the "big house."

██ █ "The right of subrogation is founded, not upon contract, but upon justice and equity, and rests upon the principle that substantial justice should be attained regardless of form. It is a creature of equity, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in equity and good conscience, ought to pay it." Oxford Production Credit Ass'n v. Bank of Oxford, 196 Miss. 50, 16 So. 2d 384.

"As a general rule, where a person interested in the administration of an estate as heir, devisee, legatee, or surviving spouse pays, in order to protect his interest or benefit the estate, or has his interest taken for, or applied to the satisfaction of, a debt or claim against the estate for which the general estate, or the interests of

others, are primarily liable either in whole or in part, he will be subrogated to the rights of the creditor whose debt is thus paid, to the extent that may be necessary to reimburse him for the amount for which he or his interest in the estate is not primarily responsible * * *'' 83 C. J. S., Section 15, p. 614.

We feel that the decision of the chancellor was based on a solid foundation, and that this is such an unusual case as to fully justify the decree which was entered in the lower court and that the decree is accordingly affirmed.

Affirmed.

*Lee, P.J.,* and *Arrington, Rodgers* and *Jones, JJ.,* concur.